PRISCILLA R. OWEN, Circuit Judge:
Federal laws that include 18 U.S.C. §§ 922(a)(3) and 922(b)(3), and 27 C.F.R. § 478.99(a), generally prohibit the direct sale of a handgun by a federally licensed firearms dealer (FFL) to a person who is not a resident of the state in which the FFL is located. In a suit brought by Fredric Russell Manee, Jr. and others, the federal district court enjoined the enforcement of these laws, concluding that they violate the Second Amendment and the Due Process Clause of the Fifth Amendment.[1] We reverse the district court’s judgment and vacate the injunction.
I
Andrew and Tracy Hanson, who are residents of the District of Columbia and members of the Citizens Committee for the Right to Keep and Bear Arms (the Committee), travelled to Texas desiring to purchase two handguns from Manee, an FFL in Arlington, Texas, who is also a member of the Committee. It is undisputed that the Hansons would be eligible under the laws of Texas and the District of Columbia to own and possess the handguns that they selected from Mance’s inventory. However, federal law prevents Manee from selling a handgun directly to the Hansons since they are not residents of Texas. Federal law would have permitted Manee to transfer the handguns to the FFL in the District of Columbia so that the Hanson’s could purchase the firearms from that FFL. The federal laws do not impose or even allude to a fee if such a transfer occurs, but the FFL in the District of Columbia would have charged the Hansons a transfer fee of $125 for each handgun, above and beyond the purchase price. The Hansons declined to pursue this method of obtaining the firearms because they objected to the additional fees and to shipping charges. They could not purchase the handguns of their choosing from the sole FFL in the District of Columbia because that dealer has no inventory and only sells firearms transferred from FFLs outside of the District.
Manee, the Hansons, and the Committee initiated suit in Texas challenging the federal laws that restrict the sale of handguns by an FFL to residents of the state in which the FFL is located, asserting that the federal laws contravene the Second and Fifth Amendments. The plaintiffs sought an injunction prohibiting the enforcement of these laws. The district court denied the Government’s Motion to Dismiss for Lack of Standing, granted the plaintiffs’ motion for summary judgment, and denied the Government’s competing *186 motion for summary judgment. The district court enjoined the enforcement of the challenged laws, concluding that they violated both the Second Amendment and the equal protection component of the Fifth Amendment’s Due Process Clause. The Government has appealed.
H ,
Because the Hansons are not Texas residents, Manee, a Texas FFL,- cannot lawfully sell handguns to them. Such a transaction is prohibited by 18 U.S.C. § 922(a)(3) and (b)(3), which provides:
(a) It shall-be unlawful—...
(3) for 'any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, the State where it maintains a place of business) any firearm purchased or otherwise obtained by such person outside that State, except that this paragraph (A) shall not preclude any person who lawfully acquires a firearm by bequest or intestate succession in a State other than his State of residence from transporting the firearm into or receiving it in that State, if it is lawful for such person to purchase or possess such firearm' in that State, (B) shall not apply to the transportation or receipt of a firearm obtained in conformity with subsection (b)(3) of this section, and (C) shall not apply to the transportation of any firearm acqüired in any State .prior to the effective date of this chapter....

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—...
, (3) any firearm to any person, who the licensee, knows or has reasonable cause to believe .cloes- not reside in (or if the person is a corporation or pther business entity, does .not maintain a place of business in) the State in which the licensee’s place of business is located, except that this paragraph (A) shall not apply to the sale of delivery of any rifle or shotgun to a resident of a State other than a State in which the licensee’s place of business is located if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States), and (B) shall not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes....[2]

Regulations promulgated to implement these prohibitions are set forth . in 27 C.F.R. § 478.99(a), which provides:
(a) Interstate sales or deliveries., A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or .deliver any firearm to any person not licensed under this part and who the licensee knows or has reasonable cause to believe does not reside in (or if a corporation or other business entity, does not maintain a place of business in).the State.in which the licensee’s place of business or activity is- located: Provided, That the foregoing provisions of this paragraph (1) shall not apply to the sale or delivery of a rifle or shotgun (curio or relic, in the case of a licensed *187 collector) to a resident of a State other than the State in which the licensee’s place of business or collection premises is located if the requirements . of § 478.96(c) are fully met, and (2) shall not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes (see § 478.97).[3]

The question is whether these federal laws violate the Second Amendment,
m
The Second Amendment provides: “A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.”[4] The United States Supreme Court held in District of Columbia v. Heller that the Second Amendment “guarantee[s] the individual right to possess and carry weapons in case of confrontation.”[5] After extensive analysis of the historical context of the Second Amendment, the Court concluded “that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right” to keep and bear arms.[6] The Court reasoned that “self-defense ... was the central component of the right itself.”[7] With regard to handguns, the Court observed that, “the American people have considered the handgun to be the quintessential self-defense weapon.”[8] In contemplating why a citizen might prefer a handgun over long guns for home defense, the Court held, “[w]hatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and. a complete prohibition of their use is invalid.” [9]

The Supreme Court' has recognized, however, that “[l]ike most rights, the right secured by the Second Amendment is not unlimited.”[10] The Court explained in< Heller that: • ‘ •
[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the cariying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of. arms.[11]

The Court added: “We identify these presumptively lawful regulatory measures only as examples; our list does not purport tó be exhaustive.”[12]

In National Rifle Association of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, our court was called upon to apply Heller in determining *188 whether federal statutes[13] that prohibit FFLs from selling handguns to a person under the age of 21 were constitutional in light of the Second Amendment.[14] We first canvased the analytical frameworks that other Circuit Courts of Appeals had utilized in Second Amendment cases, identified “[a] two-step inquiry” employed by some of those courts, and “adopt[ed] a version of this two-step approach.”[15] We concluded “that the first inquiry is whether the conduct at issue falls within the scope of the Second Amendment right.”[16] That undertaking, we said, entails “looking] to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee.”[17]

The district court in the present case undertook such an analysis and determined that “the earliest known state residency restrictions on the purchase or possession of firearms” occurred in 1909.[18] The district court concluded that “these early twentieth century state residency restrictions do not date back quite far enough to be considered longstanding.”[19] Because we conclude that the laws and regulations at issue withstand strict scrutiny, we will assume, without deciding, that they are not “longstanding regulatory measures”[20] and are not “presumptively lawful regulatory measures.”[21] We will also assume, without deciding, that the strict, rather than intermediate, standard of scrutiny is applicable.
IV
The Supreme Court has said in the First Amendment context that to withstand strict scrutiny, a regulation must be “justified by a compelling government interest” and must be “narrowly drawn to ■serve that interest.”[22] When strict scrutiny is applicable, the Government “must specifically identify an ‘actual problem’ in need of solving,” and the “curtailment of [the constitutional right] must be actually necessary to the solution.”[23] Though this is “a demanding standard,” and “‘[i]t is rare that a regulation restricting speech because of its content will ever be permissible,’ ”[24] the Supreme Court has observed that “those cases do arise,”[25] and has said that “we wish to dispel the notion that strict scrutiny is ‘strict in theory, but fatal in fact.’ ”[26]

*189 The district court accepted that when Congress enacted the Omnibus Crime Control and Safe Streets Act of 1968[27] and the Gun Control Act of 1968,[28] there was an actual problem in need of solving.[29] The findings and declarations set forth in the Crime Control Act reflect that Congress was of the view that “the existing Federal controls over [widespread traffic in firearms] do not adequately enable the States to control this traffic within their own borders through the exercise of their police power.”[30] Congress had concluded that there was a “serious problem of individuals going across State lines to procure firearms which they could not lawfully obtain or possess in their own State,” and these interstate purchases were accomplished “without the knowledge of ... local authorities.” [31] Congress found that individuals circumventing the laws of the state in which they resided included “large numbers of criminals and juveniles.”[32] Congress had additionally concluded “that the acquisition on a mail-order basis of firearms other than a rifle or shotgun by nonlicensed individuals, from a place other than their State of residence, has materially tended to thwart the effectiveness of State laws and regulations, and local ordinances ....”[33] Similarly, Congress found:
that the sale or other disposition of concealable weapons by importers, manufacturers, and dealers holding Federal licenses, to nonresidents of the State in which the licensees’ places of business are located, has' tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms ....[34]

The solution Congress crafted included the in-state sales requirement.
However, current burdens on constitutional rights “must be justified by current needs-.”[35] The overarching question in a strict-scrutiny analysis of the laws and regulations at issue, it seems to us, is whether an in-state sales requirement remains justified by a compelling government interest and is narrowly drawn to serve that interest after the Gun Control Act was amended by the Brady Act[36] and in light of federal regulations promulgated after the in-state sales requirement was *190 enacted.[37]

All concede that there is a compelling government interest in preventing circumvention of the handgun laws of various states. The plaintiffs recognize that current federal laws, including the Brady Act, do not require all information regarding compliance with the various state and local gun control laws'to be included in databases accessible by FFLs nationwide. The plaintiffs maintain, however, that the instate sales requirement is not narrowly tailored because the states could be compelled by federal law to provide all necessary information. We conclude that the Government has demonstrated that the instate sales requirement is narrowly tailored, notwithstanding the information that is available or could, at least theoretically be made available, to .all FFLs under federal laws and regulations.
There are more than 123,000 FFLs nationwide.[38] It is unrealistic to expect that each of them can become, and remain, knowledgeable about the handgun laws of the 50 states and the District of .Columbia, and the local laws within the 50 states. The district court relied on 27 C.F.R. § 478.24[39] to. support the conclusion that FFLs can “ensure that their firearms transactions comport with state and local law.”[40] But the compilation of state gun laws by the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives is more than 500 pages long, and it provides the full text of those laws.[41] FFLs are'not engaged in the practice of law, ánd we do not expect even an’ attorney in one state to master of the laws of 49 other states in a particular area,, Additionally, the compilation on which the district court relied is only updated annually.[42]

The laws of the various states differ as to who may lawfully possess a firearm: All but one state (Vermont) prohibits possession of a firearm by a felon, but the definitions of “felony” differ. Similarly, restrictions based on mental illness vary. Some states prohibit the purchase of a firearm *191 by drug' abusers,[43] and some restrict purchases by those who have abused alcohol.[44]

It is reasonable, however, for the federal government to expect that an FFL located in a state can master and remain current on the firearm laws of that state. The instate sales requirement is narrowly tailored to assure that an FFL who actually makes a sale of a handgun to someone other than another FFL can reasonably be expected to know and comply with the laws of the state in which the sale occurs.
The plaintiffs recognize that the Government has an interest in preventing circumvention of the states’ varying firearms laws, but they assert that federal law could require all FFLs to comply with the guns laws of the state in which a buyer of a handgun resides, just as federal law requires FFLs to comply with state and local laws throughout the United States when selling long arms.[45] They assert, “[i]f Manee can follow an out-of-state rifle law, he can follow an out-of-state handgun law.”
■However, at least some states have regulated the sale of handguns more extensively than they have regulated the sale of long gunB. For example, the Government has identified state laws that require a mandatory waiting period for the purchase of handguns, but not for long guns,[46] and state laws that limit the number of handgun purchases, but not long gun purchases, to one per .month.[47]

But there is another reason that the plaintiffs’ reliance 'on the disparate treatment federal law accords handguns and long guns does not carry the day. In the First Amendment context, the Supreme Court has recognized in response to an “tihderinelusivity” argument that “[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.”'[48] The Court observed, “[w]e have accordingly upheld laws—even under ’ strict scrutiny— that conceivably could have restricted even greater amounts of speech in service of their stated interests.”[49] In Williams-Yu-lee v. Florida Bar, the Court held that a Florida statute prohibiting judges and judicial candidates from personally soliciting campaign funds[50] survived strict scrutiny even though Florida law permitted “a judge’s campaign committee to solicit money, which arguably reduces public confidence in the integrity of the judiciary just as much as a judge’s personal solicitation.” [51]

*192 With regard to the contention that the in-state sales requirement is unconstitutional as applied to Manee and the Han-sons, the plaintiffs assert that the District of Columbia requires police pre-approval of any handgun transfer, citing D.C. Code § 7-2502.06(a), so that an FFL in another state would not have to become acquainted with District of Columbia laws because it could rely on a permit issued by police in the District of Columbia. The obvious flaw in this argument is that an FFL in a state would have to ascertain that all that was required under the laws of the District of Columbia was such a permit. There is no logical basis for requiring FFLs across the country to know the gun laws of the District of Columbia but not the laws of the 50 States.
In resolving an as-applied challenge, we consider only whether the rule advances government interests in the aggregate and not whether the rule advances government interests in the individual case before us.[52] The “overall problem the government seeks to correct” with the in-state sales requirement is the circumvention of the laws of a state in which a person desiring to obtain a handgun resides that impose restrictions more stringent than those of some other states.[53] We cannot look only to Texas or District of Columbia law; we must ask whether the federal regulation advances the Government’s interests in the aggregate. It does. The in-state sales requirement is not unconstitutional as applied to Manee and the Hansons.
V
The district court held that the in-state sales requirement violated the equal protection guarantee in the Due Process clause of the Fifth Amendment. The court reasoned that “the federal law not only creates a discriminatory regime based on residency, but it also involves access to the constitutional guarantee to keep and bear arms.”[54]

To succeed on an equal protection claim under the Due Process Clause of the Fifth Amendment, a plaintiff is required to “show that two or more classifications of similarly situated persons [are] treated differently.” [55] If we determine that the classification “impermissibly interferes with the exercise of a fundamental right or operates to the peculiar advantage of a suspect class,” we subject the classification *193 to strict scrutiny.[56] Otherwise, we will uphold the classification if it is “rationally related to a legitimate state interest.”[57]

The in-state sales requirement does not discriminate based on residency. So we do not subject it to any scrutiny—strict or otherwise—under the equal protection component of the Due Process Clause. The cases on which the district court relied in concluding that the federal laws at issue “impinge[] on residency”[58] involved state laws that granted benefits to state residents.[59] The in-state sales requirement does not favor or disfavor residents of any particular state. Rather, it imposes the same restrictions on sellers and purchasers of firearms in each state and the District of Columbia.
* # *
We REVERSE the district court’s judgment and VACATE the order granting injunctive relief.

. Manee v. Holder, 74 F.Supp.3d 795, 813-14 (N.D. Tex. 2015).

. 18 U.S.C. § 922(a)(3), (b)(3).

. 27 C.F.R. § 478.99.

. U.S. Const, amend. II.

. 554 U.S. 570, 592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)

. Id. (emphasis in original). '

. Id. at 599, 128 S.Ct. 2783 (emphasis in original).

. Id. at 629, 128 S.Ct. 2783.

. Id.

. Id. at 626, 128 S.Ct, 2783.

. Id. at 626-27, 128 S.Ct. 2783; see also McDonald v. City of Chicago, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion) (“We made it clear in Heller that our holding did not cast doubt on ' such longstanding regulatory, measures as 'prohibitions on the possession of firearms by felons and the mentally ill,’ laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.’ We repeat those assurances here.” (citation omitted)).

. Heller, 554 U.S. at 62-7 n.26, 128 S.Ct. 2783.

. 18 U.S.C. § 922(b)(1) and (c)(1).

. 700 F.3d 185, 192 (5th Cir. 2012).

. Id. at 194.

. Id.

. Id.

. Mance v. Holder, 74 F.Supp.3d 795, 805 (N.D. Tex. 2015).

. Id.

. McDonald v. City of Chicago, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion).

. Dist. of Columbia v. Heller, 554 U.S. 570, 627 n.26, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

. Brown v. Entm’t Merchs. Ass’n, 564 U.S. 786, 799, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011).

. Id. (quoting United States v. Playboy Entm’t Grp., 529 U.S. 803, 822, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000)).

. Id. (quoting Playboy, 529 U.S. at 818, 120 S.Ct. 1878).

. Williams-Yulee v. Florida Bar, — U.S. -, 135 S.Ct. 1656, 1666, 191 L.Ed.2d 570 (2015).

. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 237, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (quoting Fullilove v. Klutznick, 448 U.S. 448, 519, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) (Marshall, J., concurring in the judgment)).

. Pub. L. No. 90-351, 82 Stat. 197 (1968).

. Pub. L. No. 90-618, 82 Stat. 1213 (1968).

. See Mance v. Holder, 74 F.Supp.3d 795, 808-09 (N.D. Tex. 2015). (“First, the Court agrees the Government’s interest in preventing handgun crime is a compelling interest.”).

. Crime Control Act § 901(a)(1), 82 Stat. at 225 (1968).

. S. Rep. No. 89-1866 (1966), at 19.

. S. Rep. No. 90-1097 (1968), at 80; see also Crime Control Act § 901(a)(2), 82 Stat. at 225 (1968) (“The Congress hereby finds and declares ... that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians; narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States....").

. Crime Control Act § 901(a)(4), 82 Stat. at 225 (1968).

. Id. § 901(a)(5), 82 Stat. at 225 (1968).

. Shelby Cty. v. Holder, 570 U.S. 529, 133 S.Ct. 2612, 2619, 186 L.Ed.2d 651 (2013) (quoting Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 203, 129 S.Ct. 2504, 174 L.Ed.2d 140 (2009)).

. Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993).

. See 27 C.F.R. § 478.24.

. U.S. Dep't of Justice, Office of the Inspector,. General Evaluation and Inspections Division, Review of ATF’s Federal Firearms Licensee Inspection Program at i (2013), available at ' https://oig.justice.gov/reports/2013/el 305 .pdf.

. The text of 27 C.F.R. § 478.24 provides:
(a) The Director shall annually revise and furnish Federal firearms licensees with a compilation of State laws and published ordinances which are relevant to the enforcement of this part. The Director annually revises the compilation and publishes it as “State Laws and Published Ordinances— Firearms” which is furnished free of charge to licensees under this part. Where the compilation has previously been furnished to licensees, the Director need only furnish amendments of the relevant laws and ordinances to such licensees.
(b) “State Laws and Published Ordinances—Firearms” is incorporated by reference in this part. It is ATF Publication 5300.5, revised yearly. The current edition is available from the Superintendent of Documents, U.S. Government- Printing Office, Washington, DC 20402, It is al$o available for inspection at the National Archives and Records Administration (NARA), For information on the availability of this material at-NARA, call 202-741-6030, or.go to: http://www.archives.gov/federaLregister/ code_of_federal_regulations/ibr_locations. html. This incorporation by reference was .approved by .the Director of the Federal Register..

. Mance v. Holder, 74 F.Supp.3d 795, 810 n.11(N.D. Tex. 2015),

. See generally State Laws and Published Ordinances—Firearms (32nd Edition), Bureau of Alcohol, Tobacco, Firearms, & Explosives (Nov. 22, 2017), https://www.atf.gov/firearms/state-laws-and-published-ordinances-firearms-32 nd-edition [https://perma.cc/BCNU2-FYHS] (last visited Nov. 29, 2017).

. See 27 C.F.R, §'478.24(a).

. See, e.g., Md. Code Ann., Pub. Safety §§ 5-133(b)(5); Mo. Rev. Stat. § 571.010.

. See, e.g., Md. Code Ann., Pub. Safety §§ 5-133(b)(4); Tenn. Code § 39-17-1316.

. See 18 U.S.C. § 922(b)(3)(A) (providing that an FFL may sell or deliver "any rifle or shotgun to a resident of a State other than a State in which the licensee’s place of business is located if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States) ... ”).

. See, e.g., Fla. Const. art. I, § 8(b); Fla. Stat. § 790.0655(1); Md. Code Ann., Pub. Safety §§ 5-101(p), 5-123; Wis. Stat. § 175.35(2)(d).

. See, e.g., Cal. Penal Code §§ 27535, 27540(f); Md. Code Ann., Pub. Safety §§ 5-128(b), 5-129; N.J. Stat. Ann. §§ 2C:58-2(a)(7), 2C:58-3(i), 2C:58-3.4.

. Williams-Yulee v. Florida Bar, — U.S. -; 135 S.Ct. 1656, 1668, 191 L.Ed.2d 570 (2015).

. Id.

. Id. at 1663.

.. Id. at 1668.

. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 801, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (holding that the validity of a provision challenged on an as-applied basis "depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it farthers the government's interests in an individual case”); United States v. Edge Broad. Co., 509 U.S. 418, 431, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993) (noting that the as-applied inquiry focuses on the "general circumstances” of a litigant’s acts and does not require proof that "the state interests supporting the rule actually were advanced by applying the rule” in the litigant’s case); see also Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 463-64, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (rejecting an as-applied challenge to a state law regulating solicitation by attorneys and rejecting the argument that "nothing less than actual proved harm to the solicited individual would be a sufficiently important state interest to justify disciplining the attorney who solicits employment in person for pecuniary gain”).

. See Crime Control Act § 901(a)(5), 82 Stat. at 225 (1968) ("The Congress hereby finds and declares ... that the sale or other disposition of concealable weapons ... to nonresidents ... has tended to- make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions.”).

. Mance v. Holder, 74 F.Supp.3d 795, 814 (N.D. Tex. 2015) (emphasis omitted).

. Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012) (per curiam).

. NRA v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 211-212 (5th Cir. 2012) (quoting Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam)).

. Id. at 212.

. Mance, 74 F.Supp.3d at 814.

. See ids="4226375" index="100" url="https://cite.case.law/f-supp-3d/74/795/#p813">id. (citing Attorney Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 899, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (holding unconstitutional a preference in state civil service employment opportunities for veterans who were residents when they entered military service); Mem’l Hosp. v. Maricopa Cty., 415 U.S. 250, 254-64, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (holding unconstitutional a state law establishing instate residency of a fixed duration as a prerequisite to receiving free, non-emergency medical care)).